Randal S. Mashburn
U.S. Bankruptcy Judge

Dated: 4/25/2024



# IN THE UNITED STATES BANKRUPTCY COURT
# MIDDLE DISTRICT OF TENNESSEE

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| 530 DONELSON, LLC, | ) | Case No. 3:24-bk-00879 |
| | ) | Chapter 11 |
| Debtor. | ) | Judge Randal S. Mashburn |

## ORDER AND OPINION PARTIALLY DENYING BHAVIN GHODOSARA'S MOTION TO DISMISS THE CHAPTER 11 BANKRUPTCY CASE BASED ON SINGLE ISSUE OF ASSERTED LACK OF CORPORATE AUTHORITY AND RESERVING ALL OTHER ISSUES

Bhavin Ghodasara, a member of 530 Donelson, LLC, filed an expedited motion to dismiss this Chapter 11 bankruptcy based on several arguments. The Court set the motion for hearing on April 16, 2024, solely to address whether, as a matter of law, the LLC members who filed the petition on behalf of the Debtor were precluded from taking such action under a state court order appointing a receiver. The Court reserved all other issues raised in the motion to dismiss for a subsequent hearing.

The Debtor, state court receiver John McLemore, and FirstBank filed responses to the motion to dismiss based on the authority issue and presented argument through counsel at the April 16, 2024, hearing. Counsel for the following parties also appeared and participated in the hearing: Mr. Ghodasara, the U.S. Trustee, and Eric Lowman and David Patterson.

After reviewing the motion to dismiss and responses and after hearing lengthy argument at the April 16, 2024, hearing, the Court finds that the Debtor and its managing members were not precluded from filing the bankruptcy petition on behalf of the Debtor by the state court's appointment of a receiver. The general rule in the Sixth Circuit and under the Tennessee law relied upon by the state court is that appointment of a receiver does not deprive a company of the right to file bankruptcy,

and the state court's orders do not clearly indicate an intent to deviate from the general rule.

## BACKGROUND

The Court considers the following facts to be undisputed for purposes of the Court's ruling on the legal issue of whether the Debtor's managing members retained corporate authority to file bankruptcy despite the state court's appointment of a receiver.

The Debtor is a member-managed LLC. Its three members are Eric Lowman, David Patterson, and Bhavin Ghodasara, with Mr. Lowman and Mr. Patterson being the managing members. Mr. Lowman signed the bankruptcy petition on behalf of the Debtor. While Mr. Ghodasara complains of some corporate formalities, such as notice to him, not being followed, he does not contest that Mr. Lowman had the authority under the LLC's Operating Agreement to file the bankruptcy on behalf of the Debtor, subject to voting in favor of doing so by the requisite percentage of membership interests.[1]

Mr. Ghodasara's primary argument, and the only one set for expedited hearing by the Court, was that the appointment of a receiver by the Davidson County Circuit Court stripped the Debtor and its managing members of authority to file bankruptcy and placed that authority solely with the receiver.

As further background, Mr. Ghodasara, on behalf of himself individually and the Debtor derivatively, sued Mr. Lowman and Mr. Patterson in the Davidson County Circuit Court in April 2022, Case No. 22C787. In January 2024, the state court entered two orders that Mr. Ghodasara argues deprived the Debtor's managing members of authority to file bankruptcy. The first is the Order on Motion for Court-Appointed Receiver, entered January 4, 2024 (the "Receivership Order"; Doc. 18, Ex.

---

[1] Mr. Ghodasara concedes that defects in formalities could be cured through ratification. He also argues that if he prevails in his argument in the pending litigation that his ownership interest in the Debtor is 33%, not 10%, then Mr. Lowman and Mr. Patterson would not have had the requisite vote of 67% to authorize the bankruptcy filing. However, the membership interest percentages and voting dispute were not at issue for determination at the April 16, 2024, hearing.

1 (also numbered Doc. 18-1)), and the second is an order titled Order on Plaintiff's Motion for Contempt, entered January 23, 2024 (the "January 23 Order"; Doc. 14, Ex. 19 (also numbered Doc. 14-19), pp. 222 – 226).

In the Receivership Order, the state court referenced its authority to grant the equitable remedy of appointing a receiver under Tenn. Code Ann. § 48-249-616 and 48-249-805. (Doc. 18-1, p. 8.[2]) The state court quoted this broad statement of its authority under § 48-249-616: "A court may grant any equitable relief it considers just and reasonable under the circumstances, may dissolve an LLC or may direct that the dissolved LLC be merged into another or new LLC or other entity, or otherwise be terminated, on the terms and conditions the court deems equitable." (*Id.*)

The state court then stated:

> 530 Donelson, LLC is a sole asset LLC that is in danger of losing its sole asset through the actions of the Defendants and the inaction of counsel for the LLC. It is obvious to this Court that the sole asset of the LLC and the LLC as a whole are in need of protection from this Court throughout the litigation process.

(*Id.*, pp. 8-9 (cleaned up).) After commenting on the defendants' "lackadaisical approach" to the litigation, the court found that "a neutral third-party is necessary to manage not just the sole asset of the LLC, but also the LLC," and granted plaintiffs' motion for a receiver. (*Id.*, p. 9.) The court appointed a receiver over:

> 530 Donelson, LLC and its sole asset, the improved real property located at 530 Donelson Pike in Nashville, Tennessee, together with all buildings and improvements erected or standing on the real property, and all appurtenances, liens, easements, personal property, equipment, inventory, assets, royalties, receivables, documents, books, records, papers, accounts, deposits, equities, intellectual property …, fixtures, privileges, licenses and rights attached or belonging to the real property, and with all rents, issues, income and profits of the foregoing, to the extent owned by the parties or in which either party has an interest (all of the foregoing, the "Receivership Estate").

---

[2] For Doc. 18-1, the Court refers to the original page numbers assigned to the state court's order; not those assigned by CM/ECF upon filing the document with the Bankruptcy Court.

(*Id.*)

The state court then described the actions the receiver should take, including negotiating the company's loan with FirstBank, collecting rents, establishing bank accounts, and investigating best uses for the property. The court ordered the parties to turn over books, records, rents and other funds of the Receivership Estate to the receiver. (*Id.*, pp. 9-10.)

The court order then stated: "The Receiver shall have all powers of a Court-appointed receiver that are described in Tenn. Code Ann. § 29-40-112, all of which are incorporated by reference herein." (*Id.*, p. 10.) Additionally, the court provided that the receiver had authority to hire and employ professionals and delegate as may be appropriate. (*Id.*) Pursuant to the order, the receiver could seek reimbursement of fees and expenses as provided in Tenn. Code Ann. § 29-40-121 and would have immunity pursuant to § 29-40-118. (*Id.*, pp. 10-11.) Though summarized, these are all the powers granted the receiver by the state court. In conclusion, the court stated: "The authority granted to the Receiver by this Order is self-executing. The Receiver is authorized to act on behalf of the Receivership Estate as the Receiver deems appropriate, without further Order of this Court (except for those actions with respect to which this Order expressly requires further order of the Court)." (*Id.*, p. 11.)

It is fair to say that the result of the Receivership Order was that the state court receiver was given the typical powers exercised in such receiverships. The Receivership Order adopted the statutory language relating to receiverships and included a few other miscellaneous provisions. However, fundamentally, it was a more or less plain vanilla receivership – with nothing that would alter the structure of the LLC, formally remove members, or deal with the possibility of bankruptcy.

With a fairly ordinary receivership in place at that point, Mr. Ghodasara must rely heavily on the January 23 Order to contend that the majority members were stripped of any authority to file bankruptcy for the LLC. The primary purpose of the January 23 Order was to deal with Mr. Ghodasara's motion for contempt against defendants Mr. Lowman and Mr. Patterson for violating three of the state court's

orders entered in 2023, prior to the appointment of the receiver. (Doc. 14-19, p. 222.[3]) The court described Mr. Ghodasara's arguments about the violations, and then noted that the receiver's counsel had argued two points: that all negotiations for the company or its property were to be made through the receiver, and all funds belonging to the company or receivership estate need to be paid to the receiver. (*Id.*, pp. 222-224.)

The court found that the defendants "find ways to go around the Court's Orders." The court then ordered as follows:

> … The Court admonishes and ORDERS that moving forward Defendants are no longer allowed to decide whether any conversation relating to the Subject Property are negotiations or not. Defendants are ORDERED to notify the Receiver and Plaintiff's Counsel immediately of all contacts, inquiries, conversations, negotiations, offers, emails, bar-talks, visits and etc. – simply any communication related to the Subject Property.
>
> *Defendants are further ORDERED not to take any actions relating to the Company or the Subject Property as a Receiver has been appointed in this case, and the Receiver will dictate what actions the Company will take.* Further, all negotiations relating to the Subject Property will be done only by the Receiver, but Parties are to update the Receiver if they receive any offers for the Subject Property.

(*Id.*, p. 225 (footnote omitted) (emphasis added).)

The parties dispute the effect of these two state court orders on the Debtor's and its managing members' authority to file the petition and put the Debtor into bankruptcy.

## DISCUSSION

The state court's orders have to be considered in the context of state and federal law. The authority to bind an entity to a voluntary petition in bankruptcy is determined by state law. *Union Planters Nat'l Bank v. Hunters Horn Assocs.* (*In re Hunters Horn Assocs.*), 158 B.R. 729, 730 (Bankr. M.D. Tenn. 1993) (citations omitted). Additionally, the receivership was ordered pursuant to Tennessee state law.

---

[3] For the January 23 Order, Doc. 14-19, the Court refers to the page numbers assigned by CM/ECF upon filing the document with the Bankruptcy Court.

The extent to which the Bankruptcy Code preempts state law is governed by federal law. *C.f., Arizona v. United States*, 567 U.S. 387, 399, 132 S. Ct. 2492, 2500, 183 L. Ed. 2d 351 (2012) (Under the Supremacy Clause of the U.S. Constitution, federal law "shall be the supreme Law of the Land," and Congress has the power to preempt state law.); *In re Yaryan Naval Stores Co.*, 214 F. 563, 565 (6th Cir. 1914) ("The settled rule is that the jurisdiction of the courts in bankruptcy in the administration of the affairs of insolvent persons and corporations is exclusive and paramount."); *In re Donaldson Ford, Inc.*, 19 B.R. 425, 430 (Bankr. N.D. Ohio 1982) (same).

This Court is bound by clear Sixth Circuit precedent determining the effect of receivership orders on a company's and its management's authority to file bankruptcy. The general rule in the Sixth Circuit is that the appointment of a receiver and issuance of the typical injunction against interference does not affect a company's, or by extension, its managers' authority to file bankruptcy. *See Struthers Furnace Co. v. Grant*, 30 F.2d 576, 577 (6th Cir. 1929) ("[T]he pendency of a receivership does not ordinarily prevent the filing of a voluntary petition," nor does the usual injunction against interference.); *Muffler v. Petticrew Real Est. Co.*, 132 F.2d 479, 481 (6th Cir. 1942) (A company is "not deprived of the of the right to file its petition merely because its property [is] in the custody of [a] state court receiver.").

The Court finds *In re Yaryan Naval Stores Co.*, 214 F. 563 (6th Cir. 1914) particularly instructive. In that case, receivers had been appointed in Georgia and Mississippi over an Ohio corporations' property in those states. The order appointing receivers "was in the usual form in such cases," commanding company officers and agents to turn over property to the receivers and authorizing the receivers to continue the business and operate the plants in Georgia and Mississippi. *Id*. The order enjoined the company and its officers, agents, creditors and other persons "from interfering or attempting to interfere in any manner whatsoever with the possession, use, operation, or control of any part of said property, . . . and from instituting or

prosecuting any actions, suits or proceedings against [the company or] affecting any property in which the [company] is interested . . . ." *Id.* at 564.

Subsequently, creditors filed a petition for the company to be placed in an involuntary bankruptcy, to which the company essentially consented. *Id.* The receivers argued that the creditors and the company had violated the injunctive language in the receivership orders and that because of the injunction, the creditors and company lacked the power to put the company into bankruptcy. *Id.*

The Sixth Circuit interpreted Section 4 of the Bankruptcy Act as "clearly manifest[ing] the intention of Congress to confer the rights and privileges of the Bankruptcy Act upon all persons and all corporations except those expressly exempted from its operation." *Id.* at 565. The Circuit Court then reasoned that:

> Rights and privileges so positively bestowed cannot be destroyed, denied, or abridged by any power save that which created and brought them into being. Nor, **in the absence of specific declaration**, will it be presumed that any court intends to make an order which must be ineffective because in direct conflict with the legislative will and mandate.

*Id.* (emphasis added). The Court in *Yaryan* went on to say that the state court order "must be read and interpreted in the light of, and in connection with, the relevant and explicit provisions of the controlling act of Congress." *Id.* When so read and interpreted, the Court found that the receivership order contained nothing to indicate an intention to prohibit bankruptcy. *Id.*

While the Sixth Circuit's ruling in *Yaryan* involved the Bankruptcy Act, the result should be the same under the Bankruptcy Code. *In re Donaldson Ford, Inc.*, 19 B.R. 425, 431 (Bankr. N.D. Ohio 1982) (The Bankruptcy Code "contains nothing in its provisions or in its legislative history to evidence an intention of Congress relating to the question of the authority of corporate directors and officers to act on behalf of a debtor notwithstanding a state blanket receivership injunction, to change the law as interpreted in the Bankruptcy Act of 1898.").

Two principles can be drawn from the *Yaryan* case and the authority cited in that opinion. First, if a court intends in a receivership order to deprive a company of

the right to file bankruptcy, it must expressly state its intent to deviate from the general rule that a receivership will not affect bankruptcy rights. In the words of *Yaryan*, there would need to be a "specific declaration" to that effect. *Id.* at 565.

The second principle derived from the Sixth Circuit cases is that it is questionable whether any provision expressly prohibiting bankruptcy would be enforceable and not preempted by the Bankruptcy Code. *Yaryan Naval Stores*, 214 F. at 565-66 ("To deny the right of the debtor . . . to take the benefit of the act and thereby secure a discharge from its debts, is to deny the ultimate paramountcy of the act[.]"); *see also Merritt v. Mt. Forest Fur Farms of Am., Inc.* (*In re Mt. Forest Fur Farms of Am., Inc.*), 103 F.2d 69, 71 (6th Cir. 1938) (recognizing a constitutional right to seek relief under the Bankruptcy Act and Art. 1, Sec. 8, clause 4, Constitution of the United States, and holding a state court order restraining the debtor and its management from filing bankruptcy without the consent of the state court to be "erroneously entered" as it denied the company of its constitutional right), cert. denied 308 U.S. 583 (1939); *In re Donaldson Ford, Inc.*, 19 B.R. 425, 431 (Bankr. N.D. Ohio 1982) (citing *Merritt*, 103 F.2d 69) (stating that any attempt to prohibit a voluntary Chapter 11 filing would be ineffective).

The governing caselaw seems quite clear that a state court cannot take away a company's authority to file bankruptcy and place it solely with the receiver without, at a bare minimum, expressly stating that intention. Even if that express intention is reflected in a state court order, a bankruptcy court would need to engage in a second layer of review regarding the federal preemption of any such provision. Fortunately, it is not necessary to go down the path of constitutional analysis since there is nothing in the two applicable state court orders addressing bankruptcy.

Indeed, the state court's orders are silent about bankruptcy. The terms of the orders in this case are similar to the terms of the order at issue in the *Yaryan* case, which the Sixth Circuit found to lack an indication of an intention to prohibit bankruptcy. Mr. Ghodasara argues that the state court did not prohibit bankruptcy, but instead placed the authority to file bankruptcy with the receiver. Mr. Ghodasara

relies heavily on the language from the January 23 Order, which ruled on a motion for contempt of non-receivership-related orders, enjoining Mr. Lowman and Mr. Patterson, the Debtor's managing members, from taking "any actions relating to the Company or Subject Property as … the Receiver will dictate what actions the Company will take." (Doc. 14-19, p. 225.) The Court finds this general language, with no specific reference to bankruptcy, to be insufficient to except the order from the general rule that appointment of a receiver does not deprive a company or its management of the right to file bankruptcy.

It is also instructive that the two state court orders did not include any other action that would have effectively vested authority to file bankruptcy solely in the receiver without directly dealing with the Bankruptcy Code or the Supremacy Clause. An alternative option for a state court that may not be inconsistent with Sixth Circuit law would simply be to remove the company's management or restructure the entity in some manner, either by court order or action of the receiver. *See, e.g., Sino Clean Energy, Inc. v. Seiden* (*In re Sino Clean Energy, Inc.*), 901 F.3d 1139, 1140-41 (9th Cir. 2018) (receiver had replaced the company's board of directors, so former directors who filed the petition were held to no longer have authority to put the company into bankruptcy).

As for removing the company's management, the Court finds it telling that the state court noted its broad authority to "grant any equitable relief it considers just and reasonable under the circumstances," including dissolving an LLC, directing that it be merged into another entity, or otherwise be terminated. (Receivership Order, Doc. 18-1, p. 8 (quoting Tenn. Code Ann. § 48-249-616).) So the state court recognized its ability to make fundamental changes in the LLC but chose not to take those steps. The state court made no alteration to the Debtor's corporate structure or management, but instead merely appointed a receiver over the Debtor and its property and said the receiver would decide the company's actions.

The Sixth Circuit approach on this question is also consistent with Tennessee statutory law on the subject. In addition to the general rule in the Sixth Circuit that

a receivership order will not affect a company's or its management's rights to file bankruptcy, the state receivership empowering statute that the state court incorporated into its order follows the same general rule.

The state court described some actions the receiver was empowered to take – none of which was commencing a bankruptcy case, and then granted the receiver all the powers described in Tenn. Code Ann. § 29-40-112, as well as the rights in subsections 118 and 121 of that chapter. (*Id.*, pp. 9-10.)

Tennessee Code Annotated Section 29, Chapter 40 contains Tennessee's adoption of the Uniform Commercial Real Estate Act. The Act itself is silent as to a receiver's or company's retained authority to put the entity in receivership into bankruptcy; however, the comments include the drafters' intent.

The Act includes broad injunctive relief that accompanies the appointment of a receiver under the Act unless a court orders otherwise. Tenn. Code. Ann. § 29-40-114 provides:

> (a) Except as otherwise provided in subsection (d) or ordered by the court, an order appointing a receiver operates as a stay, applicable to all persons, of an act, action, or proceeding:
>
> (1) To obtain possession of, exercise control over, or enforce a judgment against receivership property; . . .

Lest the company in receivership's filing of bankruptcy be interpreted as an act "to obtain possession of" or "exercise control over" receivership property, the official comments to the Uniform Commercial Real Estate Act, as adopted by Tennessee, puts that possible argument to rest. It states that:

> The stay created by Section 14 is narrower in scope than the automatic stay arising in a bankruptcy proceeding. Section 14 does not prevent the owner from seeking bankruptcy protection, nor does it prevent other creditors from placing the owner into bankruptcy, even if the bankruptcy filing would result in an interference with the receiver's possession, custody, or control of receivership property. *See, e.g., Gilchrist v. GE Capital Corp.*, 262 F.3d 295 (4th Cir. 2003) (federal court receivership order does not bar creditors from filing involuntary petition against debtor).

*Id.*, cmt. 1.

Thus, under the very Act from which the Debtor's receiver derived his power, the general rule is that the appointment of a receiver does not prevent the Debtor from seeking bankruptcy protection. To make an exception to the general statutory rule, the state court would have had to expressly order otherwise, and it did not.

The state court Receivership Order and January 23 Order did not overcome the general rule reflected in the official comments to the Tennessee statute that a receivership does not deprive the Debtor or its managing members of their right and authority to file bankruptcy. Thus, the statutory provisions and the Sixth Circuit caselaw are in sync: general language granting broad powers to a state receiver or limiting authority of existing management is not enough to deprive a debtor of its right and authority to file bankruptcy. Since no express language addressing the subject can be found in the two applicable orders, it is unnecessary to go further in analyzing any constitutional limitations on what a state court can do in this regard.

## CONCLUSION

Looking at the express language in the two orders, there is not enough to call into question the Debtor's and its managing members' retention of their right and authority to file this bankruptcy case. That limited issue over interpretation of the two orders was the only matter addressed at the April 16, 2024, hearing. All other issues raised in the motion to dismiss have been set for a further hearing by separate order.

For the reasons stated, Mr. Ghodasara's motion to dismiss based solely on the legal effect of the state court's appointment of a receiver and related orders is denied.

IT IS SO ORDERED.

This Order has been electronically signed. The Judge's signature and Court's seal appear at the top of the first page.
United States Bankruptcy Court.